IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-411-D

| | | |
|---|---|---|
| ALEXIS WAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Alexis Way ("plaintiff" or, in context, "the claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 25, 27). Each party filed a memorandum in support of its motion (D.E. 26, 28). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 29). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded for further proceedings.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## BACKGROUND

I.    **Case History**

Plaintiff filed applications for DIB and SSI on September 2009, alleging a disability onset date of 1 February 2004. Transcript of Proceedings ("Tr.") 158, 332-42. On 4 May 2011, an Administrative Law Judge ("ALJ") issued a decision (Tr. 158-70) denying the applications, and plaintiff sought review by the Appeals Council. It vacated and remanded the decision with instructions to the ALJ, including giving further consideration to treating and nontreating source opinions. Tr. 179-81.[2] The Appeals Council also directed the ALJ to associate an additional claim for DIB filed 19 May 2011 with the other claims. Tr. 179-81.

On 19 November 2012, a new hearing was held before the same ALJ who issued the 4 May 2011 decision, at which plaintiff and a vocational expert testified. Tr. 105-48. In a written decision dated 29 January 2013, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 19-31. Plaintiff timely requested review by the Appeals Council, but it denied review on 30 May 2014. Tr. 1-6, 14-15. Plaintiff commenced this proceeding for judicial review on 21 July 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

---

[2] The ALJ's 29 January 2013 decision following the remand, which is the subject of the instant appeal, summarized the Appeals Council's instructions as follows:

- Give further consideration to the treating and non-treating source opinions.

- Give further consideration to the claimant's maximum residual functional capacity, and provide rationale with specific references to evidence of record in support of assessed limitations.

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

Tr. 19.

**II. Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### III.    Findings of the ALJ in the 29 January 2013 Decision

Plaintiff was 42 years old on the alleged onset date of disability and 51 years old on the date of the 2012 administrative hearing and issuance of the 2013 ALJ decision. Tr. 30 ¶ 7; 31, 105. The ALJ found that she has at least a high school education (Tr. 30 ¶ 8) and past relevant work as a shuttle driver, childcare worker, hand packager, cashier, and dining room attendant (Tr. 29 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 22 ¶ 2. At step two, the ALJ found that plaintiff had the

following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease with disc protrusion; mild aortic valvular stenosis; depression; and personality disorder. Tr. 22 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings, including specifically Listing 1.04. Tr. 22-23 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day.[3] Tr. 24 ¶ 5; *see* 20 C.F.R. §§ 404.1567(b), 416.967(b). He further found that plaintiff was subject to the following limitations:

> [S]he can only occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally bend, balance, stoop, kneel, crouch, or crawl; and frequently, but not constantly, finger, grasp, and hold with the upper right extremity. The claimant should avoid hazardous machinery. She can perform simple, routine, and repetitive tasks in a low-production environment, with no complex decisionmaking, constant change, or dealing with crises. The claimant can have occasional contact with co-workers and no contact with the general public.

Tr. 24 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 29 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of shipping/receiver weigher, electronics worker, and housekeeper. Tr. 30 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 31 ¶ 11.

---

[3] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 1 July 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

**IV.     Standard of Review**

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

### I. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's 29 January 2013 decision should be reversed and benefits awarded her or, in the alternative, the case be remanded for a new hearing on the grounds that the ALJ erred by: (1) not finding that plaintiff's back impairment met or medically equaled Listing 1.04A and (2) not properly evaluating certain medical opinions of her treating psychiatrist Kisook Chang, M.D. Each contention is addressed in turn below.

### II. ALJ's Determination regarding Listing 1.04A

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. R. 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a) (medical findings must be at least equal in severity and duration to the listed

criteria), 416.926(a) (same). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

The listing at issue here, Listing 1.04A, requires a spinal disorder with evidence of nerve root compression characterized by four specified conditions. It reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, [4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

Listing 1.04A.

After making the general finding that plaintiff's impairments do not meet or medically equal any listing, the ALJ found that "[r]egarding the claimant's degenerative disc disease of the lumbar spine, the evidence of record does not demonstrate that the claimant meets Listing 1.04."[4] Tr. 23 ¶ 4. The ALJ then stated as follows with respect to the paragraph A criteria:

> There is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain or limitation of motion of the spine. There is no evidence of motor loss accompanied by sensory or reflex loss with a positive straight-leg raising test (sitting and supine).

Tr. 23 ¶ 4.

Plaintiff argues that the ALJ failed to provide an adequate explanation for his determination that she did not meet Listing 1.04A, citing *Radford v. Colvin*, 734 F.3d 288, 292

---

[4] Although the ALJ fails to find expressly that plaintiff's spine impairment does not medically equal Listing 1.04A, that determination is implied by, among other circumstances, his general finding that plaintiff's impairments do not meet or medically equal any listing. On remand, the Commissioner should take care to specify her determination regarding both meeting and medically equaling the listings she addresses.

(4th Cir. 2013). The court agrees that the ALJ's explanation was not adequate, although not on the precise grounds plaintiff alleges.

In *Radford*, the ALJ provided no explanation for his conclusion that Listing 1.04A and other specified listings were not satisfied, other than stating that he had "'considered, in particular,' [the specified listings], and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" *Id.* at 292. The court remanded the case for further administrative proceedings on the ground, among others, that the lack of an explanation by the ALJ of his listing determination precluded judicial review of it. *Id.* at 295.

Here, unlike in *Radford*, the ALJ did provide an explanation of his ruling on Listing 1.04A. As set out above, he found that there is no evidence of nerve root compression that was characterized by either of two required conditions, namely, neuro-anatomic distribution of pain or limitation of motion of the spine. He also found, without reference to any nerve root compression, that there was no evidence of two of the other required conditions: motor loss accompanied by sensory or reflex loss, and positive sitting and supine straight-leg raising tests. Tr. 23 ¶ 4.

The problem with the ALJ's explanation is that it is inaccurate. There *is* evidence of nerve root compression and each of the four required conditions, including evidence the ALJ himself discusses.

Nerve root compression is evidenced by a 5 June 2007 MRI. Tr. 553. It found that "[t]he L5-Sl demonstrates a right paracentral disc protrusion which closely abuts and minimally displaces the right S1 nerve root posteriorly." Tr. 553. Although this report did not use the term "compression" to describe the effect of the protrusion on the nerve, the report of a Duke

University physician on his examination of plaintiff on 2 April 2008 did: "**MEDICAL DECISION-MAKING:** Includes review of an MRI of her lumbar spine which reveals a lateral recess compression of her traversing Sl nerve root without significant left sided disease." Tr. 722.

The report on an evaluation of plaintiff at a pain clinic on 17 January 2008—after the MRI revealing the nerve root compression, which the report itself notes (Tr. 679)—showed neuro-anatomic distribution of pain in the form of radiculopathy, limitation of motion of the spine, motor loss in the form of muscle weakness accompanied by reflex loss, and positive straight-leg raising testing. Tr. 679. The ALJ's own summary of the pain clinic report references this evidence:

> Upon examination, palpatory tenderness and decreased reflexes were noted. straight leg raising was positive, and a limp was noted. Strength in the lower extremities was 4/5, and there was some reduced range of motion [of the back].

Tr. 26 ¶ 5. Although the pain clinic report does not indicate whether or not the positive straight leg raising was from both the supine and sitting positions, as required by Listing 1.04A, the Duke University physician report does note positive straight leg raising from both positions. Tr. 722.

The court concludes that substantial evidence does not support the reasons given by the ALJ for his determination on Listing 1.04A. There is sufficient evidence of satisfaction of the Listing 1.04A criteria such that the court cannot conclude that this deficiency is harmless. *See Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. L10CV537, 2013 WL 4431964, at *4 & n.7, *7 (M.D.N.C. 14 Aug. 2013). Remand is therefore required.

Moreover, impeachment by the ALJ's own decision of the reasons he provides for his Listing 1.04A determination renders unclear whether these stated reasons are the actual reasons

for the ALJ's determination or whether there were other, unstated reasons. Meaningful review of an ALJ's decision is, of course, impossible if the ALJ fails to adequately explain the basis for his decision. *See DeLoatche*, 715 F.2d at 150. Remand of this case is therefore warranted for this additional reason.

### III. ALJ's Evaluation of Dr. Chang's Medical Opinions

#### A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length

and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources and explanation of the weight given such opinions apply to nonexamining sources. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinion of a treating source than to the opinion of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under appropriate circumstances, however, the opinions of a nonexamining source may be given more weight than those of a treating source. *See* Soc. Sec. R. 96–6p, 1996 WL 374180, at *3 (2 July 1996).

Similarly, the factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d) (partial listing of "other sources"); 416.913(d)(1) (same). As with opinions from

physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. R. 06-03p, 2006 WL 2329939, at *5.

**B.  Analysis**

Dr. Chang treated plaintiff from April 2008 to at least October 2012. *See* Tr. 861-75, 887, 953-59, 967. On 26 July 2010, she completed a form entitled, "Medical Statement Concerning Depression for Social Security Disability Claim." Tr. 861-62. In that form, she indicated that plaintiff was markedly impaired in two areas: "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 861-62. These are the only two marked limitations Dr. Chang found plaintiff to have. *See* Tr. 861-62.

After discussing the other limitations found by Dr. Chang, the ALJ addressed her opinion of marked limitation in, what the ALJ termed, plaintiff's "ability to complete a normal workday and workweek." Tr. 27 ¶ 5. The ALJ stated:

> [Dr. Chang] further opined that the claimant had marked impairment in her ability to complete a normal workday and workweek. Dr. Chang's own treatment notes consistently documented stable objective findings of good judgment, normal thought processes, and improved mood. The limitations in the residual functional capacity, which are consistent with the other opinions given significant weight, adequately accommodate the claimant's ability to complete a normal workday and workweek. Therefore, this portion of Dr. Chang's opinion was given little weight (Ex. 29F).

Tr. 27 ¶ 5.

Plaintiff argues that the ALJ erred in his assessment of Dr. Chang's marked-limitation opinions. The court agrees.

Most apparent is that the ALJ did not specifically address the opinion by Dr. Chang on plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Nor did he specifically address the opinion on plaintiff's ability to perform at a constant pace without an unreasonable number and length of rest periods. It may be that the ALJ deemed these abilities to be included in "the ability to complete a normal workday and workweek," but he did not state so.

More troublesome are the grounds given by the ALJ for discrediting Dr. Chang's marked-limitation opinions: inconsistency with her own treatment notes, adequate accommodation of the marked limitations by restrictions in the RFC determination, and, impliedly, inconsistency with the opinions of other sources. There are deficiencies associated with each of these grounds.

As to the purported inconsistency of Dr. Chang's opinions with her treatment records, there is no evidence showing that Dr. Chang regularly found plaintiff to have good judgment. The court has identified only one office visit note—the note of the first office visit—in which Dr. Chang expressly addressed plaintiff's judgment, and she found it poor. Tr. 875 (14 Apr. 2008 visit). The Commissioner did not identify in her memorandum any notes expressly mentioning plaintiff's judgment.

The court has considered whether "good judgment" as used by the ALJ could reasonably be deemed to refer to descriptions in Dr. Chang's notes of good decision making by plaintiff in her life, as opposed to an express finding of good judgment. The court concludes that it could

not.  With perhaps only one exception (*see* Tr. 865), Dr. Chang's notes do not discuss plaintiff in such terms.

The finding that Dr. Chang's treatment notes consistently found plaintiff to have an improved mood also lacks support in the record.  While there are certainly notes indicating that plaintiff's mood was not depressed or was euthymic (*see*, *e.g.*, Tr. 867 (20 July 2009); 887 (13 Oct. 2010); 956 (17 Oct. 2011)), there are others stating that her mood was depressed, including during plaintiff's latest visits with Dr. Chang (*see*, *e.g.*, Tr. 953 (10 July 2012); 954 (11 Apr. 2012); 967 (8 Oct. 2012)).  Findings of improved mood were not consistent.  Thus, the initial ground given by the ALJ for discrediting Dr. Chang's marked-limitation opinions fails for lack of substantial supporting evidence.

The next ground given by the ALJ—accommodation in the RFC determination—is brought into question because of the ALJ's apparent misunderstanding of the content of Dr. Chang's treatment notes regarding plaintiff's judgment and mood.  In light of this misunderstanding, the court cannot say that this ground for the ALJ's determination on Dr. Chang's marked-limitation opinions is supported by substantial evidence.

Moreover, this ground appears improperly to base the weight given a medical source opinion on the restrictions included in the RFC determination.  The RFC determination should be based on the weight given medical source opinions (among other factors), not vice versa.

The final, implicit ground for the ALJ's attribution of little weight to Dr. Chang's marked-limitation opinions is that they are inconsistent with the opinions of other sources to whose opinions the ALJ gave significant weight.  In effect, the ALJ is giving greater weight to the opinions of these other sources.  But these other sources are consulting, one-time examining sources (psychiatrist Thomas A. Wilson, M.D.; psychologist R. Meredith Hall, Ph.D.; licensed

15
Case 5:14-cv-00411-D   Document 30   Filed 07/01/15   Page 15 of 18

psychological associate David C. Johnson, M.A.; and vocational evaluator Lucinda Herndon-Williams, M.A.) and a nonexamining source (psychologist Jonathan Mayhew, Ph.D.). *See* Tr. 27 ¶ 5. Mr. Johnson and Ms. Herndon-Williams, of course, are not "acceptable medical sources" under the Regulations. Ordinarily, the opinions of treating sources are entitled to greater weight than those of examining and nonexamining sources, and the fact that a source is an acceptable medical source tends to give such source's opinions greater weight than those of sources who are not acceptable sources. In view of the ALJ's deficient understanding of Dr. Chang's treatment notes, the court cannot say that the ALJ's discrediting of her marked-limitation opinions on the implicit ground that they inconsistent with the opinions of these other sources is supported by substantial evidence.

The flaws in the ALJ's analysis are material because of the significance of Dr. Chang's marked-limitation opinions. She is not only a treating source, but she was plaintiff's principal mental-health provider. Moreover, she rendered her marked-limitation opinions after treating plaintiff for more than two years, during which she saw plaintiff 11 times.

Notwithstanding Dr. Chang's unique importance as plaintiff's principal mental health provider and the ALJ's reliance on her records to discredit her marked-limitation opinions, the ALJ nowhere provides a detailed review of her records or her over-two-year course of treatment of plaintiff. Instead, the ALJ devoted a three-sentence summary to them.[5] Tr. 26 ¶ 5.

---

[5] The description reads:

> The remainder of the mental health treatment records documented conservative treatment with therapy and Cymbalta. The claimant reported that treatment helped her depression, and although she had a personality disorder, her thought processes were intact. She continued to report[] familial stressors, but symptoms and functioning generally remained stable (Ex. 6F, 15F, 29F, 30F, 33F, 34F, and 39F-41F).

Tr. 26 ¶ 5.

Further, at the 2012 hearing, the vocational expert testified to the effect that plaintiff would be unable to perform any work if she was subject to marked limitations Dr. Chang opined her to have. Specifically, after the vocational expert testified that a hypothetical claimant could perform jobs in various occupations if she had the RFC as determined by the ALJ, plaintiff's counsel asked whether the hypothetical claimant could perform such work if she were "markedly impaired in the ability to complete a normal work day, or a work week without interruptions from her psychological symptoms, as well as being markedly impaired in the ability to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 142-43. The vocational expert responded: "No. That would eliminate gainful employment." Tr. 143. It is therefore apparent that the marked-limitation opinions of Dr. Chang are potentially outcome determinative. *See Garner*, 436 Fed. Appx. at 226 n.*

The court concludes that the ALJ committed error that was not harmless in his evaluation of Dr. Chang's marked-limitation opinions. This error provides an independent ground for remand of this case.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 25) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 27) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case, matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 15 July 2015 to

file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See*, *e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This 1st day of July 2015.

_____
James E. Gates
United States Magistrate Judge